UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

　　v.

TERRANCE HARDEE,

　　　　　Defendant.

HONORABLE JOSEPH E. IRENAS

CRIMINAL ACTION NO. 12-734
(JEI)

**OPINION**

**APPEARANCES:**

OFFICE OF THE UNITED STATES ATTORNEY
By:　Matthew T. Smith, Esq.
401 Market Street, 4th Floor
P.O. Box 2098
Camden, New Jersey, 08101
　　　Counsel for Plaintiff

DAVID RUDENSTEIN, ESQ.
By:　David Rudenstein, Esq.
9411 Evans Street
Philadelphia, Pennsylvania 19115
　　　Counsel for Defendant

**IRENAS**, Senior District Judge:

　　　Pending before the Court is Defendant Terrance Hardee's

Motion for Judgment of Acquittal Pursuant to Rule 29 and Motion

for New Trial Pursuant to Rule 33.　For the reasons set forth

below, Hardee's Motion will be denied.

**I.**

The circumstances giving rise to Hardee's conviction began in June, 2012. On June 21, 2012, DEA Agent Greg Sheridan, undercover as a drug courier named Rock, met with John Mitchell, Ralph Dennis, and a confidential informant who helped set up the meeting, Kevin Burk. (Tr. Transc., dkt. no. 61, at 125-26.) In this meeting, Agent Sheridan presented the group with an opportunity to conduct a robbery of a drug stash house. (*Id.*) Approximately a week later, on June 26, 2012, the same group met once again to discuss the cocaine that would be in the stash house, as the group tested Agent Sheridan on his knowledge of drugs to ensure he was not a law enforcement official. (*Id.* at 152-53.) The group met again on July 10, 2012, to review the planned robbery. (*Id.* at 170.)

On July 15, 2012, the evening before the planned robbery, Mitchell, Burk, Dennis, and Terrance Hardee met at an apartment on Albright Street in Philadelphia. (Gov't. Ex. A at 88.) Dennis and Hardee knew each other already, but this was the first time that Hardee and Mitchell met. (*Id.*) During this meeting, the group spent "a few hours" discussing the plans for the robbery on July 16. (*Id.* at 88-89.) In particular, Hardee's role was to tie up anyone they found in the house and use a stun gun to incapacitate them during the course of the robbery. (*Id.* at 89.) The group also discussed how they would

divvy up the cocaine they recovered; they expected to find fifteen kilograms total, based upon the information they received from Rock. Rock was entitled to three kilograms for helping to stage the robbery, while the remaining cocaine would be split with Mitchell and Dennis taking five kilograms apiece, and Burk and Hardy each receiving one.[1] (*Id.* at 90.)

The next morning, July 16, 2012, Hardee met up with the group in Philadelphia, carrying a bag of zip ties and a stun gun. (*Id.* at 99.) The group proceeded to Cherry Hill, where they met Rock in a parking lot at a Red Lobster. (*Id.* at 102.) From there, they followed Rock to a storage unit in Maple Shade, where Rock and Hardee had a detailed conversation reviewing the plans for the robbery, as Rock and Hardee had never met before. (Tr. Transc., dkt. no. 61, at 178-79.) Hardee indicated that he understood the plans and would even be tying up Rock, whom the group believed would be inside the stash house during the robbery. (*Id.* at 188.) Shortly after confirming the plans, Agent Sheridan gave a signal to law enforcement agents nearby, who moved in to arrest Hardee, Mitchell, and Dennis, while Burk (the confidential informant) stayed out of the way. (*Id.* at 192.)

---

[1] Mitchell noted that based upon prior expectations, Hardee expected to receive three kilograms as payment, but Mitchell and Dennis determined that Hardee and Burk would receive one kilogram apiece. (Gov't. Ex. A at 91.)

On May 23, 2013, Defendant Hardee was found guilty on two counts of a three-count indictment. Under Count I, Hardee was convicted of conspiring with co-Defendant Ralph Dennis to commit robbery, in violation of 18 U.S.C. § 1951(a). (Verdict Sheet, at 1, dkt. no. 57.) Under Count II, Hardee was convicted of conspiring to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846. (*Id.* at 2.) The jury found that Hardee was not guilty of Count III, which charged Hardee with knowingly and willfully using and carrying a firearm during and in relation to the commission of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(2). (*Id.* at 3.)

On June 6, 2013, Hardee filed the instant Motion seeking an order for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or alternatively an order granting a new trial pursuant to Federal Rule of Criminal Procedure 33.

## II.

Hardee now seeks a judgment of acquittal, and in the alternative, a new trial.

Federal Rule of Criminal Procedure 29(a) states: "[T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In reviewing a Rule 29 motion after the rendering of a verdict, a district court must "review the

record in the light most favorable to the prosecution to
determine whether any rational trier of fact could have found
proof of guilt beyond a reasonable doubt based on the available
evidence." *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir.
2001) (citation omitted).  The Court is required to "draw all
reasonable inferences in favor of the jury verdict." *United
States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996).  This is a
"particularly deferential standard of review," and reviewing
courts "must be ever vigilant . . . not to usurp the role of the
jury by weighing credibility and assigning weight to the
evidence, or by substituting [the court's] judgment for that of
the jury."  *United States v. Boria*, 592 F.3d 476, 480 (3d Cir.
2010) (alterations in original) (quotation marks omitted).
Thus, a finding of insufficiency should be "confined to cases
where the prosecution's failure is clear."  *United States v.
Leon*, 739 F.2d 885, 891 (3d Cir. 1984) (quotation marks
omitted).

Federal Rule of Criminal Procedure 33(a) states: "Upon the
defendant's motion, the court may vacate any judgment and grant
a new trial if the interest of justice so requires."  The
district court "can order a new trial on the ground that the
jury's verdict is contrary to the weight of the evidence only if
it believes that there is a serious danger that a miscarriage of
justice has occurred – that is, that an innocent person has been

convicted." *United States v. Davis*, 397 F.3d 173, 181 (3d Cir.

2005) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d

Cir. 2003)). When a district court evaluates a Rule 33 motion,

it does not view the evidence in the light most favorable to the

government; rather, it "exercises its own judgment in assessing

the Government's case." *Johnson*, 302 F.3d at 150. Nonetheless,

granting Rule 33 motions "are not favored," and "are to be

granted sparingly and only in exceptional cases." *Gov't of

Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)

(internal citations omitted).


### III.

Defendant's Motions do not meet their respective legal

burdens and consequently they are denied. Each Motion is

analyzed in turn.


### A.

To convict the Defendant of the underlying offense in Count

I, the Government was required to prove the following three

elements beyond a reasonable doubt: (1) two or more persons

agreed to commit a robbery that, if successful, would have

obstructed, delayed, or affected interstate commerce, or agreed

to commit or threaten physical violence to individuals they

believed to be engaged in narcotics trafficking in furtherance

of a plan and purpose to obstruct, delay, or affect commerce or

the movement of narcotics in commerce by robbery, (2) the

Defendant was a party to or member of that agreement, and (3)

the Defendant joined the conspiracy knowing of its unlawful

objective, and intending to join together with at least one

other co-conspirator shared a unity of purpose and the intent to

achieve a common goal. (Jury Charge, Dkt. No. 56, 37-38.) To

convict the Defendant of the underlying offense in Count II, the

Government was required to prove the following four elements

beyond a reasonable doubt: (1) two or more persons agreed to

distribute, or possess with intent to distribute, cocaine, (2)

the Defendant was a party to or member of that agreement, (3)

the Defendant joined the conspiracy knowing of its unlawful

objective, and intending to join together with at least one

other co-conspirator to achieve that objective, shared a unity

of purpose and the intent to achieve a common goal, and (4) the

conspiracy involved five kilograms or more of cocaine. (Jury

Charge, Dkt. No. 56, 40-41.)

Hardee attacks his conviction by arguing that the

Government failed to demonstrate any agreement between Hardee

and Dennis sufficient to include Hardee as a member of any

conspiracy; in other words, the Government failed to prove the

second element of each Count. (Def.'s Br. at 3.) "According to

the words of the co-defendants, [Hardee] was being brought on as

a 'hand,'" and was therefore not a conspirator but instead a "hired hand." (*Id.*) Because Hardee's level of participation is irrelevant to whether Hardee agreed to be part of the conspiracy, and because the record could in fact lead a rational trier of fact to find Hardee guilty beyond a reasonable doubt, the Defendant's Motion for Acquittal fails.

At trial, the Government presented the testimony of John Mitchell, a co-conspirator along with Defendants Dennis and Hardee. Mitchell's testimony described the July 15, 2012 meeting, the evening before the planned robbery was to take place. (Gov't. Ex. A at 88). Mitchell, Dennis, Burk, and Hardee all attended this meeting, which lasted a few hours, where the group discussed a plan for how they would rob the house that they targeted. (*Id.* at 89.) In particular, the group agreed that Hardee would "tie anybody up in the house and stun them with the stun gun" that Hardee would be carrying into the house during the robbery. (*Id.*) The group also discussed how they would divide the proceeds of the robbery, ultimately concluding that, if their information was correct and the house contained fifteen kilograms of cocaine, Hardee would receive one kilogram as payment rather than the three he initially expected to receive. (*Id.* at 90.)

Later in his testimony, Mitchell described the events of July 16, 2012, the planned date of the robbery. That morning,

Hardee met the other defendants carrying bags "with the hand ties and the stun gun." (*Id.* at 99.) Hardee, Mitchell, Dennis, and Burk then traveled to New Jersey to commit the robbery that they had been discussing in their prior meetings. (*Id.;* Tr. Transc., dkt. no. 61, at 172.) Upon arrival at a storage unit in Maple Shade, and before the Defendants were taken into custody, Hardee and Agent Sheridan, still undercover as Rock, reviewed the plan for the robbery, a recording of which was played at trial. (Tr. Transc., dkt. no. 61, at 178-79.) Hardee and Agent Sheridan reviewed the robbery plans in detail, which Hardee responded to "by saying, yeah, I know everything," and that Hardee was "good with [the plan]." (*Id.* at 179-80, 191.) They also discussed how the proceeds of the robbery would be split up among the group. (*Id.* at 180.) This account matched the one given by Mitchell during his testimony at trial. (Gov't. Ex. A at 106.)

Such evidence, viewed in a light most favorable to the prosecution, leads this Court to conclude that a rational trier of fact could find, beyond a reasonable doubt, that Hardee agreed with the other parties to the conspiracy to rob the targeted house, take the cocaine that they found, and divvy up the proceeds of the robbery. Thus, Hardee's Motion for Judgment of Acquittal must be denied.

**B.**

The Defendant argues in his supporting brief that a new trial is necessary because the greater weight of the evidence does not support the guilty verdict.  (Def.'s Br. at 3.) Rather, in the Defendant's view, the evidence demonstrates only that Hardee was a "hired hand but not a conspirator," while his co-Defendant Dennis and Mitchell were actually the only parties to the conspiracy.  (*Id.*)  In light of the evidence produced at trial, the Court finds that Defendant's claims do not pose a serious danger that a miscarriage of justice has occurred.

Ultimately, the distinction that Hardee seeks to rely on is irrelevant.  The evidence produced by the Government at trial demonstrated that Hardee met with Dennis, Mitchell, and Burk on July 15, 2012, the evening before the planned robbery.  (Gov't. Ex. A at 88-89.)  At that meeting, the group agreed that Hardee's role would be to tie up anyone that they found at the scene of the robbery.  (*Id.*)  In turn, Hardee would be paid out of the cocaine they recovered in the robbery; though Hardee may have expected more, such expectation or his actual compensation is irrelevant.  (*Id.* at 90.)  When Hardee reviewed the plan with Agent Sheridan, the two of them reviewed the terms and confirmed that Hardee fully understood the plan for the robbery.  (Tr. Transc., dkt. no. 61, at 178-79, 191.)  The fact that the jury

10

considered these facts and more, and rendered a guilty verdict, does not indicate that an injustice occurred.

## IV.

In light of the foregoing, Defendant's Motion for Judgment of Acquittal, or in the alternative, Motion for a New Trial, is denied.  An appropriate order accompanies this Opinion.


Date:   10-21-2013


                                   /s/ Joseph E. Irenas
                                   **JOSEPH E. IRENAS, S.U.S.D.J.**